J. C. GABLE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13965.

Court of Criminal Appeals of Oklahoma.

Feb. 22, 1967.

Fite, Robinson & Summers, Muskogee, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

■■ The plaintiff in error, J. C. Gable, hereinafter referred to as defendant, was charged by information in the district court of Muskogee County with the crime of first degree burglary, after former conviction of a felony.

The information specifically charged that on or about July 24, 1965, in the night time, the defendant broke into a certain dwelling house in Braggs, Oklahoma, occupied by and in the possession of Lillye Mae Nichols, with intent to commit the crime of assault and battery therein. On the second page of the information it was charged that defendant had previously been convicted of larceny of animals, and sentenced to serve three years in the penitentiary; and had been convicted of other crimes.

The case was tried to a jury and a verdict of guilty returned, and after presentment of the second phase of the informa-

tion, the jury returned a verdict of guilty after former conviction, but being unable to agree upon the punishment, left that duty to the court.

Thereafter the court sentenced the defendant to serve 35 years in the State Penitentiary.

A short statement of the facts is considered necessary. Everett Slape conducted a filling station in the town of Braggs, in Muskogee County. His home was back of the filling station, and adjacent to his home was a house-trailer, in which his mother, Lillye Mae Nichols, 85 years of age, lived. She slept with a light on at night, and used her walking cane to fasten the one door of the trailer.

Mr. Slape, his wife and their two children, Delores, age 12, and Johnnie, age 14 years testified. The gist of their testimony was that about three o'clock in the morning of July 24, 1965, they were all asleep in their home, when the children were awakened by someone knocking on the front door of the house. Thereafter the children observed a man go to the door of the trailer-house, and saw him force open the door, and go inside. They saw him sit down on the bed, and when their grandmother raised up, he pushed her back down. Delores testified that she saw him get on top of her grandmother, and Johnnie saw him push her back down on the bed, then get up and turn off the light. The children then aroused their parents. Mr. Slape took his gun and flashlight and went into the trailer. He found the defendant on the bed over his mother, on his hands and knees. He ordered the defendant out of the trailer, and told him to stand there, while Mrs. Slape called the officers, but defendant ran. Mr. Slape fired one shot at the defendant, which went entirely through his arm. Mr. Slape testified that the defendant ran around the house, and through two fences, when he lost track of him. He testified further that the next morning he and the city marshal found the defendant about three miles up the road

John Rogers, the town marshal, testified to receiving a call from the Slape residence, and to going with Mr. Slape and finding the defendant, who was apparently endeavoring to "thumb" a ride. After observing that defendant's pants were torn, and his shirt bloody, Rogers arrested him. Later examination revealed a small hole in defendant's arm, which witness surmised to be a gunshot wound.

Henry Joliff, deputy sheriff, testified to receiving a call from the Slape residence, and to making a search for the defendant. However, he first saw the defendant when he was brought back to Braggs. This witness testified to finding a three-inch square piece of cloth and blood on a fence at the Slape residence; and a section of the wire with the cloth attached, and the trousers and shirt the defendant was wearing were introduced into evidence.

Defendant testified in his own behalf. His testimony was that he bought a car around 5:30 the afternoon of July 23, 1965. He drove to Gore, Oklahoma and picked up his mother and took her for a ride in his new car, and took her home about 2 a. m. That during this time he drank a pint and a half pint of whiskey, and a six-pack of beer, and that he was "pretty drunk". He then started back to Muskogee and ran out of gas about a mile from Braggs. He said he went to the gas station operated by Slape for the purpose of purchasing gasoline. There were no lights in the station, so he went to the house in the rear of the station, and tried to arouse someone. He stated that he then went to the door of the trailer and was knocking on the door when Mr. Slape shot him through the arm, and he ran. He stated that he ran down the highway a ways, and lay down in a ditch and went to sleep. Defendant stated that he did not enter the trailer house. He testified:

"Q Do you remember being inside that trailer house? A No, sir.

Q Were you inside it? A No, sir. I would have remembered that.

Q You think, even though you were drunk, that you would have remembered it? A Yes, sir."

Defendant admitted that the clothing introduced in evidence was his, and that he caught his clothing while going through a fence.

Defendant's mother testified in behalf of her son, and stated that he came to her house in Gore around 9 or 9:30 the night in question, and that they drove around for some time, and her son took her home about 2 a. m. She was asked if defendant was drinking at the time, and she stated that if he was, she could not tell it. She was asked: "When he drinks, does he show it a lot?" To which she answered, "No, you can't tell it. He doesn't show it."

We are of the opinion that the testimony of defendant's mother is sufficient to refute the defendant's contention that he was in such a state of intoxication he could not remember any of the details of what, if anything, occurred in the trailer house.

We are also of the opinion that the testimony of Mr. Slape's son and daughter is sufficient to overcome defendant's denial of ever being inside the trailer house, as well as his denial of committing an assault and battery.

The man who sold the car to defendant testified that it was out of gas the next·day when he had it towed in. However, this has no direct bearing on defendant's actions, which are the basis of the charge. ·

In his brief counsel for defendant sets out two specifications of error. First, that the plaintiff in error was prejudiced by being asked by the county attorney whether he had been previously arrested and charged with the crime of assault with intent to rape; and, second, that the judgment and sentence of the court in the amount of 35 years imprisonment is excessive.

Under his first specification of error defendant contends that reversible error was committed when the county attorney asked defendant, on cross-examination, if, on a certain date defendant was "arrested and charged with the crime of assault with intent to rape".

Defendant objected to this question, and a hearing was had out of the presence of the jury. When the trial resumed, the county attorney asked defendant if he "entered a plea of guilty to a charge of assault and was sentenced to four months". Defendant answered, "Yes", which would, in effect, negate the indication that the charge of assault was "with intent to rape".

The trial court made no ruling on this question, nor on defendant's objection.

■■ It has long been the rule in Oklahoma that, on cross-examination, it is improper to attempt to elicit whether or not one has been *charged* or *arrested* for some other crime. In the case at bar, the trial court did not sustain the objection to this question, and also failed to direct the jury to disregard the same. See: Hill v. State, 81 Okl.Cr. 342, 165 P.2d 146; Pressley v. State, 71 Okl.Cr. 436, 112 P.2d 809; Glasgow v. State, Okl.Cr. 328 P.2d 185.

■ We are of the opinion that this was certainly prejudicial error, but in view of defendant's affirmative admissions in regard to his former convictions, and the testimony of his mother concerning his state of intoxication, the errors complained of were not of such magnitude as to constitute reversible error.

■■ However, we think there is merit to the contention that the sentence imposed was excessive. The jury did not fix the punishment but left the same to be fixed by the court. The punishment imposed in any offense must bear a direct relationship to the nature and circumstances of the offense committed. Bartelmehs v. State, Okl.Cr., 290 P.2d 773; Baker v. State, Okl.Cr., 291 P.2d 381.

It is our conclusion, after carefully considering the record, that the ends of justice will be served by modifying the sentence imposed from 35 years in the State Penitentiary, to 15 years in the State Penitentiary; and the judgment and sentence, as thus modified, is affirmed.

NIX, P. J., and BUSSEY, J., concur.