William Thomas FIELDS, Plaintiff-in-Error,

v.

STATE of Oklahoma, Defendant-in-Error.

No. A–15005.

Court of Criminal Appeals of Oklahoma.

Jan. 7, 1970.

Bay, Hamilton & Renegar, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Grayson P. Van Horn, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, William Thomas Fields, hereinafter referred to as defendant, was convicted on April 23, 1968, of the crime of carrying a concealed weapon after former conviction of a felony and his punishment

fixed at ten years imprisonment by a jury verdict in the District Court of Oklahoma County, Oklahoma, Case No. 34143. Judgment and sentence was imposed on May 3, 1968, in accord with the jury's verdict and this appeal has been perfected therefrom.

This prosecution was called for trial on April 23, 1968, whereupon the trial judge in chambers heard defendant's evidence on his motion to suppress evidence. The court's ruling was deferred and subsequently defendant's motion was overruled. Among several other assignments of error, defendant contends that the trial court committed error in overruling his motion to suppress the evidence for the reason that it was the result of an illegal search and seizure.

The evidence regarding defendant's arrest and seizure of evidence in question indicates that Officer Legg and Maxwell, while driving an unmarked detective's patrol car, recognized the defendant driving alone in his automobile approaching them from the opposite direction. Officer Legg testified that he had known the defendant for approximately ten years and knew his reputation as a "police character." Officer Legg further testified that after defendant's car passed by, he turned around and noticed that defendant had no license tag light; that the officers then turned around and followed the defendant for a distance of more than eleven blocks; that they stopped behind the defendant who was stopped at a traffic signal and noticed him handling something underneath his seat which made them "suspicious." After the signal light changed and the defendant proceeded through the intersection, the officers turned on their red light and the defendant pulled over, got out of his car, and approached the officers' vehicle. At that point, one of the officers frisked the defendant while another officer went to defendant's vehicle and searched it finding a gun in the glove compartment. The officers then permitted the defendant to drive alone to his home several blocks away where he talked with his wife and thereupon drove to the police station with the officers following him. There is some conflict as to when a citation for im-

proper vehicle equipment was written, but it is clear it was not completed until the officers reached police headquarters.

Defendant testified that the only thing he was informed of after pulling over was that it would be necessary for him to go to police headquarters because of the gun. Although a traffic citation charging the defendant with improper equipment was filed, the same was dismissed. In addition, the evidence shows that the defendant's vehicle was eight months old at the time of the arrest; that immediately after leaving jail, the defendant took the car to the auto dealership to have the tag light fixed, only to be advised by the mechanic that the tag light was working. The mechanic involved also testified as to examining the tag light and finding it to be working. Defendant thus contends that the automobile was searched illegally in that the arrest for no tag light was a mere subterfuge in order to search the car on suspicion, without a warrant.

 The law is well established in Oklahoma that a search may not be made upon the mere suspicions of a police officer in the absence of a warrant. Thompson v. State, Okl.Cr., 444 P.2d 849. However, an officer may arrest a person without a warrant for a public offense committed or attempted in his presence. 22 O.S.1961, § 196. In the process of an arrest, the officer may search the subject and the area in his immediate control but, if the arrest is unlawful, the search is unlawful. Wallace v. State, 49 Okl.Cr. 281, 294 P. 198.

In Bagwell v. State, Okl.Cr., 327 P.2d 479 (1958), this court held:

"We see, then, that if the defendant did not as a matter of fact commit an offense in the presence of the officers, in the absence of a warrant they would not be entitled to arrest and search his car. The offense must be real, and some triviality, excuse or subterfuge to enable the officers to make a search." 327 P.2d, at 481.

 Furthermore, if an arrest is a subterfuge and the facts are insufficient to

justify the arrest without a warrant, the arrest cannot be made valid or justified by what it brings to light. Shirey v. State, Okl.Cr., 321 P.2d 981 (1958); Catron v. City of Ponca City, Okl.Cr., 340 P.2d 504 (1959).

In support of his contentions, defendant cites Banker v. State, 61 Okl.Cr. 169, 66 P.2d 955 (1937), in which this court reversed the conviction because of the unreasonable search of an automobile absent a warrant notwithstanding that the arresting officer testified that he followed the defendant's automobile because it had "defective lights." In finding that the evidence did not support a lawful arrest thereby justifying an ensuing search of the automobile, this court in Banker v. State, supra, made the following observation:

> "It is true the sheriff undertakes to say he stopped the car because the lights were defective. If, as attempted to be shown by the sheriff in his testimony, the lights were defective, it does not stand to reason that an officer would follow the car for a mile and a half, as the sheriff says he followed this car, without arresting the defendant. * * * No officer charged with enforcing the law would follow a car for the distance the sheriff says he did if he discovered the defendant was violating a statute of the State in his presence." 66 P.2d, at 956.

In the instant case, the arresting officer testified that he recognized the defendant, noticed the defective license tag light, turned around and followed the defendant for eleven blocks. He stopped his car at a traffic signal, directly behind the defendant; he waited for the defendant to clear the intersection, and then finally turned on the red light to stop defendant's car. The officers then searched the defendant's automobile, although the defendant had voluntarily left the vehicle before the officers approached. The reason given was, because the officers were "suspicious" of defendant's movements in the car while it was stopped at the traffic signal.

■ We think it significant that the traffic citation charging the defendant with improper equipment was dismissed without fine or conviction. Accordingly, there is no conclusive evidence that the defendant was committing an offense in the presence of the officers which would justify an arrest and search. The instant case approaches the circumstances found in Banker v. State, supra. Under the facts developed, we find it difficult to understand why an officer would follow an automobile for eleven blocks before stopping the vehicle knowing the subject was violating either a state statute, or city ordinance, in his presence. From the record before the Court it appears that the arresting officers, having recognized one whom they described as being a "police character," were simply following the defendant and stopped him when they allegedly became suspicious of his movements in the automobile. We further note the holding of this court in Banker v. State, supra.

> "The defendant may be guilty, yet he is entitled to his constitutional rights, and to a fair and impartial trial, and if convicted at all he must be convicted by competent testimony lawfully secured against him, and not by officers violating the law to secure it." 66 P.2d, at 957.

We are therefore persuaded that the defendant in this case was convicted on the basis of a search which was without the authority of law. The officers having no search warrant to search the car, no warrant for the arrest of the defendant, and having failed to make a lawful arrest, the state offers nothing which would justify the search of defendant's car. Accordingly, we are of the opinion the motion to suppress should have been sustained.

■ In addition, even if it could have been said that the defendant was lawfully arrested, it does not appear under the circumstances presented herein that the search of the automobile, which resulted in finding the gun in the glove compartment, was justified, since the defendant had already left his automobile when arrested and searched by the officers. This court has long held that incident to a lawful arrest

the arresting officer may search the person, as well as the immediate area within his control, for weapons he might be able to reach or for other evidence or contraband materials he might seek to destroy.

 But more recently, the United States Supreme Court held in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist or effect his escape. * * * There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

\* \* \* \* \* \*

"No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the' area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and *the area within his reach* * * *." (emphasis added)

We note with approval the recent holding of the Ohio Court in State v. Coles, Ohio Com.Pl., 249 N.E.2d 553 applying this rule:

"The area of permissible search will be governed by the proximity of the arrestee to the point of search and the possibility of the arrestee having access to the area or place searched while he is in the custody of the arresting officer."

Thus, in the instant case, there was no apparent justification for searching the glove compartment of the automobile since it was certainly not "within his reach," nor in plain view. If the defendant had remained in his car, a search of the interior of his automobile within the area in which he might reach for a weapon or to destroy evidence would have been justified. However, when the defendant left his automobile and approached the officers, under the facts here, being alone with no one else in the car it would have been impossible for him to reach into the glove compartment to secure a weapon or destroy evidence. Since defendant had no access to the area searched, the search was not permissible or reasonable. Had there been other occupants in the car the result herein would, no doubt, be different.

 We therefore conclude that the motion to suppress the evidence should have been sustained and that the evidence resulted from an unreasonable con-consensual search, absent a warrant, not pursuant to a lawful arrest; and further because the search extended beyond lawful limits in connection with an arrest. Where a conviction is based solely on evidence obtained by means of an unauthorized search and seizure and admitted over defendant's objections, conviction will be reversed as contrary to law and the evidence. McKee v. State, 59 Okl.Cr. 353, 60 P.2d·216 (1936). Accordingly, the conviction must be reversed.

Reversed and remanded with instructions to dismiss.

BUSSEY and NIX, JJ., concur.