Bernard Clarence LAWSON, Jr., & Dee
Loren Pierce, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

Nos. A–15446, A–15593.

Court of Criminal Appeals of Oklahoma.

April 28, 1971.

Mac Oyler, Oklahoma City, for plaintiffs in error.

G. T. Blankenship, Atty. Gen., Jack Pratt, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiffs in error, Bernard Clarence Lawson, Jr., and Dee Loren Pierce, hereinafter referred to as defendants, were jointly convicted by jury verdict of Illegal Possession of Narcotics (codiene) in the District Court of Oklahoma County, Case No. CRF–69–837, and each sentenced on September 19, 1969 to eight (8) years imprisonment (Appeal No. A–15,593). Defendants were also jointly convicted in the same court, Case No. CRM–69–355, by jury verdict on the misdemeanor charge of Illegal Possession of Barbiturates and each sentenced on June 6, 1969, to six (6) months in the county jail and a $100 fine (Appeal No. A–15,446). The appeals from these convictions have been consolidated as their disposition involves the legality of a single search from which resulted the evidence supporting both convictions. Below defendants' motions to suppress and trial objections to the evidence on the grounds of an unreasonable search were overruled.

The evidence establishes that on April 16, 1969, Oklahoma City Police Officer Billy Smith followed a 1958 Chevrolet for three-fourths of a mile, clocking it at 45 miles an hour in a 35 mile per hour zone, and observed it had no license tag light. Officer Smith stopped the vehicle from which the driver, defendant Pierce, exited while defendant Lawson remained in the passenger seat. Smith arrested Pierce, took his identification, and radioed for another patrol car. Upon the arrival of Officers Neil and Shockley in the second patrol car, defendant Lawson was removed from the Chevrolet. The three officers then searched the Chevrolet removing a hatchet from the front seat floorboard, and a brown alligator bag from the back seat floorboard. Officer Smith opened the bag and found several pills. Defendant Lawson was then arrested. Some of the pills were later identified as containing barbiturates while others contained codiene. This is the evidence admitted over defendants' objections which supported the convictions.

Officer Smith testified that upon encountering Pierce outside his vehicle, he saw a handle on the car floor through the side window. Officer Neil testified that upon his arrival in the second patrol car and before the car search, he was advised that Officer Smith had seen a hatchet through the front window of the Chevrolet. Smith stated it was a search for "weapons for our safety." Officer Neil indicated the reason for the search was because he recognized Pierce as a "character." Officer Shockley did not see or know of any weapon before he began the search. Officer Smith testified he issued citations for speeding, no tag light, and carrying a concealed weapon. The record shows the concealed weapon charge was dismissed and no indication as to the speeding and tag light charges.

In overruling defendants' objections to the evidence from the search, the trial

court expressly relied upon Robinson v. State, Okl.Cr., 444 P.2d 845 (1968), which held:

"* * * Under the circumstances here presented, the arrest for a traffic violation was a legal one and the arresting officer having knowledge that the defendant on prior occasions had carried concealed weapons, had a right and a duty to search the defendant and his immediate presence for any offensive weapon. * * *"

It is apparent the *Robinson* case is distinguishable from the instant case where the officers had no knowledge the defendants had previously carried concealed weapons. Even so, such a fact would not have allowed a search of a closed bag in the vehicle after the occupants had been removed.

Both the Oklahoma and United States Constitutions prohibit unreasonable searches and seizures and provide no warrant shall issue but upon probable cause.[1] Where the search is without warrant, the burden is on those seeking to come within one of a few defined exceptions to the constitutional warrant requirement. Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663; Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. The most common exception is a search incident to arrest. But this does not allow a limitless search. In Handley v. State, Okl.Cr., 430 P.2d 830 (1967), this Court held:

"However, the doctrine that the constitutional guaranty does not prohibit search and seizure as an incident to a lawful arrest may not be used as a pretext to

search for evidence nor does it justify a general exploratory search of the premises." 430 P.2d, at 831.

The United States Court of Appeals in United States v. Robinson, 432 F.2d 1348 (D.C.Cir.1970), involving search incident to a traffic arrest, held:

"[T]he legitimate objectives of warrantless searches of the person incident to arrest seem to be (1) seizure of fruits, instrumentalities and other evidence of the crime for which the arrest is made, in order to prevent its destruction or concealment; and (2) removal of any weapons that the arrestee might seek to use to resist arrest or effect his escape. * * * [T]he search must be directed to finding evidence which the arresting officer has probable cause to believe will be found on the person, and * * * the search be no more intrusive than necessary to recover such evidence. For some crimes—and more particularly for most traffic crimes—no search of the person for evidence may be allowed at all because no evidence exists to be found."

■ Judge Nathan R. Sobel of the New York Supreme Court states the rule as follows:

"Do the police have the right to search the person or automobile following a lawful arrest for a traffic violation?

"The answer is an unequivocal 'No!'"[2] Most state courts hold that it is unlawful for the police to search a motor vehicle following an arrest for a minor traffic violation.[3] Federal cases have reached a

1. Okla.Const. Art. II, § 30. U.S.Const., Fourth Amendment. The language is identical in both provisions. Also, the state has no power to sanction searches and seizures prohibited by the Fourth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

2. Sobel, Search and Seizure 119 (1964).

3. United States v. Tate, 209 F.Supp. 762 (1962 DC Del); McCurdy v. State, 42

Ala.App. 646, 176 So.2d 53 (1965). People v. Molarius, 146 Cal.App.2d 129, 303 P.2d 350. Travers v. United States, 144 A.2d 889 (D.C.Mun.Ct.App.1958). People v. Lewis, 34 Ill.2d 211, 215 N.E.2d 283 (1966). People v. Erickson, 31 Ill.2d 230, 201 N.E.2d 422 (1964). Sellars v. State, 237 Md. 58, 205 A.2d 296 (1964). People v. Carr, 370 Mich. 251, 121 N.W.2d 449 (1963). People v. Lee, 371 Mich. 563, 124 N.W.2d 736 (1963). State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964). Elliott v. State, 173

similar conclusion as noted in Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir. 1968):

"[A] lawful arrest of an automobile driver for a traffic offense provides no lawful predicate for the search of the driver or his car—absent special circumstances." 391 F.2d, at 315.

This is not an unfamiliar rule in this jurisdiction as noted in this Court's holding in Ellsworth v. State, Okl.Cr., 295 P.2d 296 (1956):

"Ordinarily, a minor traffic violation will not support a search and seizure."

And, in Brinegar v. State, 97 Okl.Cr. 271, 262 P.2d 464 (1953), this Court held:

"Officers are not justified after a valid arrest of motorist for minor traffic violation, in searching his person or his immediate presence, such as the seats and glove compartment of his car, excepting in cases where the officers have reasonable grounds for such action, the seats and glove compartment of the car may be searched for firearms, and this only as a precaution for the safety of the arresting officer and to prevent escape, when done in good faith." 262 P.2d, at 466.

■ Thus, assuming the arrest for a traffic violation to be lawful, there must be some special circumstances or reasonable grounds to justify a search of the motorist and his vehicle. It is the State's contention that defendants being "known characters" and the hatchet on the car floor justified the search. The officers did not say of what the defendants were known, but the record is clear that they were not known for carrying weapons or firearms offenses.

Nevertheless, assuming without holding that a search for weapons was justified, we are confronted with the extent of that search. The United States Supreme Court has held that "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed. 2d 876; Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889. In Terry v. Ohio, supra, the Court held regarding a weapons search:

"Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."

■ The United States Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), concerning a weapons search incident to arrest held it was permissible to search the person of the arrestee and "the area within his reach." *Chimel* was applied by this Court to a traffic violation arrest in Fields v. State, Okl.Cr., 463 P.2d 1000 (1970) [4], which held:

"* * * The area of permissible search is governed by the proximity of the arrestee to the point of search and the arrestee's access to the place searched while he is in the custody of the arresting officer." 463 P.2d, at 1001.

And where the defendant was outside the car at the time of the search, this Court concluded:

"* * * [T]here was no apparent justification for searching the glove compartment of the automobile since it was certainly not 'within his reach' * * *."

■ It is interesting that the officers did not first frisk the defendants, but rather at once searched the interior of the automobile. This fact, along with the oth-

Tenn. 203, 116 S.W.2d 1009 (1938). State v. Michaels, (1962) 60 Wash.2d 638, 374 P.2d 989.

4. Chimel v. California, supra, has been applied to automobile searches in other jurisdictions as well. State v. Reyes, 81 N.M. 404, 467 P.2d 730 (1970). Steel v. State, 450 S.W.2d 545 (Ark.1970). State v. Witherspoon, 460 S.W.2d 281 (Mo.1970).

er circumstances, indicates the officers were not searching for weapons the defendants might use, but were conducting a general exploratory search for evidence of other crimes unrelated to the arrest for a traffic violation.

Most certainly an officer is entitled to protect himself, but his actions must be consistent with this purpose. After both defendants were removed from the car, they were no longer able to employ any weapon that might have been inside the vehicle. Certainly the interior of the bag on the back floor of the car was beyond the arrestees' reach when they were outside the car. As was held in Amador-Gonzalez v. United States, supra:

" * * * The officers appeared to be in no danger: The defendant was outside of his car at the time of the search and virtually surrounded by three police officers. * * *

" * * *

" * * * Search incident to arrest is unreasonable, if there is a lack of relation between the search (or scope of the search) and the offense for which the arrest was made. * * *" 391 F.2d, at 315.

The search for weapons ended when the officers went beyond the area in which defendant could reach for a weapon. Beyond that point, it was a general exploratory search, not incident to the traffic arrest and without probable cause. Not only was the bag outside defendants' reach, the bag was not a weapon and a search of its interior was clearly exploratory, as exceeding the reasonable scope of the inception of the search. To hold otherwise would allow searches of the luggage and possessions of any motorist on the off-chance there might be some evidence of a criminal offense and thus reduce the Fourth Amendment to a form without substance.

The practical effect of a rule permitting warrantless "full" searches incident to most traffic arrests, or for that matter, incident to arrests for status crimes, is fearsome to imagine. The danger is "that the lowly offense of a traffic violation—of which all of us have been guilty at one time or another—may be established as the basis for searches circumventing the rights guaranteed by the Fourth Amendment." Amador-Gonzalez, supra, at 318. As observed by the Court of Appeals in United States v. Robinson, supra:

"Like any exception which has got out of control, the rule that a full search without a warrant will be supported by any lawful arrest gives dangerously broad discretion to the police officers who must apply it. To date the effect of this discretion has been most entirely to endanger the Fourth Amendment rights of social outcasts such as penniless wanderers or hippie drivers. But logically and consistently applied the rule of 'a full search incident to any lawful arrest' would also endanger the rights of the physician hurrying to a night call who runs a stop sign, or of the young woman with her bags packed and on her way back to college, or of the corporate executive arrested for criminal conspiracy under the antitrust laws or of the civil servant accused of tax fraud, or of any one of us a police officer—for whatever secret motive—wishes to search without the hindrance of normal Fourth Amendment protections."

Therefore, we reaffirm that on arrest for a traffic violation there is no lawful predicate for a search of the driver or the vehicle absent special circumstances where the officer has probable cause to search the area in which the arrestee may reach for a weapon or to destroy evidence of the crime for which he is arrested. A search exceeding these limits is constitutionally unreasonable and the fruits thereof inadmissible.

Reversed and remanded with instructions to dismiss.

BRETT, J., concurs.

BUSSEY, P. J., concurs in result.