**Myer Aaron RUHM, Plaintiff In Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A-16390.**

Court of Criminal Appeals of Oklahoma.
April 11, 1972.
Rehearing Denied April 26, 1972.

Leon E. Tabor, Oklahoma City, and Roehm A. West, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Yvonne Sparger, Asst. Attys. Gen., for defendant in error.

## OPINION

SIMMS, Judge:

Defendant in Error, Myer Aaron Ruhm, was convicted in the District Court of Oklahoma County, Oklahoma of Possession of Marijuana. A jury found the defendant guilty, fixed punishment at seven (7) years in the penitentiary, and assessed a fine of Two Thousand Five Hundred Dollars ($2,-500), from which judgment and sentence a timely appeal has been perfected to this Court.

Evidence on trial was that on August 5, 1970, Oklahoma City Police Department Narcotics Officers Jerry Legg and Charlie Acox observed the defendant in a group of 15 to 20 people congregated in the 3000 Block on North Paseo Street in Oklahoma

City, Oklahoma County, Oklahoma. The officers directed the group to disperse, which it did.

The defendant proceeded to his automobile, and the officers did likewise. The police officers proceeded in a southerly direction on Paseo Street, and upon crossing the intersection of Northwest 29th and Paseo Streets, they heard the sound of an automobile taking off at a high rate of speed, at which point the officers stopped and backed up into the intersection of 29th and Paseo and gave pursuit to a vehicle they saw approximately 100 yards away traveling west on 29th Street, approaching Shartel Street. At the time the officers undertook pursuit, they did not know the identity of the person driving the vehicle. The officers observed that the vehicle did not have a license plate light. They observed the vehicle stop at the stop sign at 29th and Shartel, at which time the vehicle made a right turn and proceeded north on Shartell with the officers in pursuit. The police officers caught up with defendant's vehicle as it crossed 30th Street, heading north, and then the defendant's vehicle made a wide turn onto Northwest 31st Street in an easterly direction and drove left of center on that street, at which point the officers put the "red light" on the vehicle and stopped the car midway in the first block on 31st Street, east of Shartel. Officer Acox proceeded to the driver's side of the vehicle, while Officer Legg proceeded to the passenger's side of the defendant's vehicle. Officer Acox ordered the defendant to dismount from his automobile, advised him that he was under arrest for three traffic violations, and asked him to produce a driver's license. When the request was made, the defendant turned and reached under the front seat of his automobile; at that point, Officer Legg, who thought the defendant might have been reaching for a weapon, opened the passenger's side door on the vehicle and leaned into the car, where he observed a partially burned marijuana cigarette lying on the floorboard under the front seat. A search for weapons produced nothing. The defendant was placed under arrest for possession of marijuana, and a further search of the car revealed five marijuana seeds in the crease between the back rest and the front seat. The defendant was then transported to police headquarters where he was booked in on the felony, and additionally cited for improper turn, improper equipment, driving left of center, and no state driver's license, which charges were subsequently dismissed.

The defendant testified that he kept his driver's license under the front seat, and later on found his driver's license under the front seat after his arrest and prior to trial. The defendant's testimony with regard to his turning and reaching under the front seat of the automobile at the time he was asked for his driver's license did not differ substantially from that of the police officers. The defendant also testified that he had seen and had smoked marijuana on occasions and admitted misdemeanor convictions for uttering a forged instrument to obtain a stimulant, as well as attempting to obtain a stimulant by fraud and deceit. He denied any knowledge of the marijuana found in his vehicle.

Approximately six months after perfecting the appeal in this case and filing briefs, in May, 1971, the defendant obtained additional appellate counsel and filed on January 26, 1972, a supplemental brief which was thereafter, on February 25, 1972, the subject of a supplemental answer brief on behalf of the State of Oklahoma. Since new and additional questions are raised in the supplemental brief, they will also be treated.

I.

Defendant contends initially that the trial court erred in failing to sustain the motion to suppress the evidence as the fruit of a subterfuge arrest and subsequent illegal search and seizure.

The motion to suppress was filed after the preliminary hearing and prior to trial, but no hearing was had until the trial, at which time the jury was excluded and the two arresting officers were called in sup-

port of said motion, which motion was overruled by the trial judge, and properly so in this Court's opinion.

The law is settled in Oklahoma that where a defendant files a motion to suppress, the burden is upon him to offer any evidence in support of the allegations contained in the motion, and further, that the question of suppressing evidence is a judicial one based on the facts and circumstances in each case, and this Court will not reverse the trial court on a question of fact where there is competent evidence reasonably tending to support the finding of the court. Bagwell v. State, Okl.Cr., 327 P.2d 479 (1958).

Defendant contends that because the officers "heard" an automobile take off at a high rate of speed and trailed the defendant's automobile approximately four blocks before stopping him (at least half of which was in pursuit) and then arrested him for three traffic violations committed in their presence, the arrest was a "subterfuge for conducting the search."

The evidence in the record simply fails to support this contention. First, there is no showing that the officers either knew who was in the vehicle or suspected there was any contraband in the automobile. The only testimony, and it was uncontradicted, is that the officers observed the violations and arrested the defendant for same. The defendant did not deny the traffic violations.

In support of his argument, the defendant cites Bagwell, supra, Fields v. State, Okl.Cr., 463 P.2d 1000 (1970), Lawson v. State, Okl.Cr., 484 P.2d 1337 (1971), and in the supplemental brief, Brumley v. State, Okl.Cr., 484 P.2d 554 (1971).

The factual distinctions between the cases cited by the defendant and the instant case are patent.

In Bagwell, supra, the officers observed a violation, gave pursuit, and stopped the defendant after a high-speed, bullet-punctuated chase, and searched his automobile after both smelling and seeing illicit whiskey. The court there affirmed the conviction despite allegations the traffic arrest was subterfuge after the officers *and* the defendant testified as to the motion to suppress. (Emphasis Added) In *Fields,* supra, the officers testified that they followed the defendant 11 blocks and waited behind him at a red light before making the arrest, based on a defective tail light, which defect was refuted by testimony, and "suspicious" movements. There the court suppressed the evidence, a hand gun, found in the glove box after the defendant left his vehicle. This Court, in the *Fields* Syllabus, stated:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist or effect his escape."

In connection with the *Fields* case, defendant in both briefs makes much of the fact that the traffic citations in the instant case were dismissed and not prosecuted, since the *Fields* decision, supra, stated such was indicative of a lack of conclusive evidence of a misdemeanor violation.

We note that at pages 24, 25, and 26 of the preliminary hearing transcript, Officer Legg testified that on the day the traffic violations were to be tried, he was involved in an investigation on South Shields Street in Oklahoma City, his vehicle broke down, and he was unable to get to court on time. He testified he did not use his police radio to seek a continuance because he felt he could still get to court on time.

The facts in *Brumley,* supra, bear no resemblance to the case at bar inasmuch as the officers observed suspicious activities at a motel and then trailed the defendant's automobile 14 blocks before they observed the car straddle the center line on a three-lane divided highway. The officers obviously were looking for a pretext to stop the automobile, especially since they jailed both the driver and his passenger for the violation.

Finally, the defendant cites the *Lawson* case wherein the defendant was convicted of narcotics possession. Lawson was the

passenger in a vehicle stopped for a ten-mile-per-hour speeding violation and no tag light. After the driver and Lawson were removed from the auto, officers seized a hatchet, which had been in plain view, from the front floorboard. Also seized, and the subject of the major complaint, was a brown alligator bag taken from the back floorboard in a "search for weapons." Only after the bag was seized and opened was Lawson arrested.

> Syllabus Number One in *Lawson* states: *"Ordinarily,* a minor traffic violation will not support a search and seizure." (Emphasis Added)

Judge Nix concluded his opinion in *Lawson,* supra, as follows:

> "Therefore, we reaffirm that on arrest for a traffic violation there is no lawful predicate for a search of the driver or the vehicle *absent special circumstances* where the officer has probable cause to search the area in which the *arrestee may reach for a weapon* \* \* \*." (Emphasis Added)

The testimony in the instant case, corroborated by the defendant, indicates that it was the defendant himself, in the act of reaching under the front seat, who provided those special circumstances which immediately ripened into the necessary and probable cause to justify the officer's entry into the automobile.

. Considering the circumstances, pre-dawn hours, and stopping an individual recognized at that time to be a person involved with drugs, it would have been unreasonable for the officers to do anything other than they did in the interest of their own safety.

Had the arrest been a subterfuge, as defendant contends, the officers, once they had recognized the defendant, would have searched his person for contraband. The evidence reflects no intention on the part of the officers whatsoever to search the automobile or the defendant, or to do anything but routinely cite him for the variety of traffic offenses they viewed in the four-block chase until the defendant himself committed an act which caused the officers to react in what we hold was a perfectly reasonable and logical manner. How many traffic violators turn and reach under the front seat when asked to produce a driver's license?

 Under the facts of this case, and in particular the behavior of the defendant, it would have been clearly unreasonable to deny the officers the right to take those measures necessary to determine whether or not the defendant did, in fact, have a weapon under the front seat of the automobile. Inasmuch as we find that the search was reasonable, therefore the evidence found was admissible.

### II.

Defendant's second contention, in both briefs, is that the trial court erred in overruling defendant's demurrer to the evidence and that the state failed to prove a material element, i. e., the wilfulness of the possession based upon facts showing knowledge of the contraband, as well as dominion and control over same. The lone authority cited is Brown v. State, Okl.Cr., 481 P.2d 475 (1971).

In the *Brown* case, supra, Brown was arrested upon entering the apartment of another person, in the company of that person, after officers, searching the unoccupied dwelling under color of a search warrant, found marijuana. Brown had slept on the couch the previous night.

In reversing Brown's conviction for possession of marijuana Judge Nix stated that from mere presence in the premises where contraband is found, without exclusive access, use, or possession of the premises, it may not be inferred that the individual knew of the presence. In this case, defendant likens the apartment in *Brown,* supra, to the defendant's automobile. The defendant testified that he did not know how the partially burned marijuana cigarette and the marijuana seeds got in his car, and that he had no knowledge of same. He testified that he has on occasions allowed other persons to use and ride in his

automobile. He argues, in view of the foregoing, plus the officers' testimony that he did not appear to be under the influence of any intoxicant at the time of his arrest, that the state has failed in its burden.

The defendant does not contradict the facts that at the time the contraband was found, as distinguished from *Brown*, supra, he was the only person in the automobile, and that he had exclusive use, possession, and access to the conveyance in which the marijuana was discovered.

Since the defendant was in that circumstance, and following the case he cites, from that exclusive access, use, and possession, the jury could infer that the defendant had knowledge of the presence of marijuana and control of same, without showing additional factors.

But, there were additional factors and circumstances. Defendant admits having seen marijuana and knew what it looked like; he also admits having used marijuana, and he presented no evidence to corroborate the access others had to his automobile.

Both *Brown*, supra, and the case relied upon by the state, Hulsey v. State, Okl.Cr., 307 P.2d 553 (1957) stand for the proposition that fact situations are fact questions for the jury. In *Brown*, supra, we said possession may be proved by circumstantial evidence, and in *Hulsey*, supra, we said in the first Syllabus:

"1. * * * Where there is a basis in the evidence from which the jury could conclude the accused is guilty as charged, the Criminal Court of Appeals will not disturb the conviction for insufficiency of evidence."

The defendant also claims there is a conflict between two statutes, 63 O.S., § 451, the section dealing with marijuana, possession under which this prosecution was had, and 63 O.S., § 469, dealing with the use aspect of drugs. Since this case deals only with possession, defendant's arguments have here neither relevance, nor materiality.

### III.

The defendant's next proposition is twofold and combines the errors asserted under one heading in the original brief and two headings in the supplemental brief. The primary thrust of the defendant's argument is that the court committed error in allowing the state to cross examine the defendant as to two (2) prior misdemeanor convictions involving stimulants, that such evidence is inadmissible, and that emphasis upon those convictions during the state's closing argument resulted in a denial of the defendant's fundamental right to a fair trial on the offense charged.

■ Taking the second contention first, the question of the propriety of the state's argument is improperly before us in that no objection was ever made to either portion of the state's argument. The law in Oklahoma requires not only that objection be timely made, but also that the defendant go further and move the objectionable matter be stricken from the jury's consideration. Thus, the matter was not properly preserved for appeal. Kuerschner v. State, Okl.Cr., 493 P.2d 1402 (1972). See also Gaddis v. State, Okl.Cr., 447 P.2d 42 (1968). Further, defendant is quite correct in observing that this Court will not consider questions raised for the first time on appeal. Carothers v. State, Okl.Cr., 299 P.2d 546 (1956).

■ As to the primary portion of this proposition, that the court erred in allowing evidence of prior unrelated convictions to be admitted, the response of the Attorney General is well taken.

As he points out, there is statutory authority, 12 O.S., § 381, and case law directly in point. Gable v. State, Okl.Cr., 424 P.2d 433 (1967) and Gilmore v. State, 365 P.2d 573 (1961).

Title 12 O.S., § 381, provides:

"No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime;

*but such interest or conviction may be shown for the purpose of affecting his credibility."* (Emphasis Added)

In *Gilmore,* supra, we construed the statute as it affects a criminal case and the credibility of the defendant.

The authority urged by the defendant in both briefs, Hardin v. State, Okl.Cr., 462 P.2d 357 (1969) is distinguishable from the case at bar inasmuch as the matter complained of there concerned evidence of other *crimes,* rather than *convictions* for other crimes. (Emphasis Added)

We note additionally that the jury was properly instructed as to the manner in which they were to consider the defendant's testimony of his prior convictions, that is, only as they affect the weight and credibility of his testimony as a whole.

### IV.

Under the headings Roman Numerals V and VI, in his supplemental brief defendant contends, without any supporting evidence in the record, that he was seventeen at the time of the commission of the instant offense, and he was entitled to be proceeded against as a juvenile under 10 O.S., §§ 1101–1506, since he was not certified as an adult in accord with those sections. Further, defendant claims a denial of his Fourteenth Amendment rights to due process and equal protection by virtue of those statutes cited, supra, which exempt females 16 and 17 years of age from adult criminal prosecution, while subjecting males of the same age to that prosecution.

Once again, the defendant is quite right in his citations to the long line of authority which hold that this Court will not consider such questions when they are not raised below and preserved for this Court in the motion for new trial and the Petition in Error. Such questions raised for the first time on appeal are simply improperly before us for consideration.

Also improperly before this Court is a motion filed by the defendant March 24, 1972, styled "Motion to Correct Unconstitutional Sentence."

That motion alludes to a decision by the United States Court of Appeals, Tenth Circuit, handed down on March 16, 1972, in the matter of Lamb v. Brown, 456 F.2d 18, which held:

"Because the purpose of the disparity in the age classification between 16–18 year old males and 16–18 year old females has not been demonstrated, we hold that 10 Okl.St.Ann. § 1101(a) is violative of the equal protection clause. *This ruling shall not apply retroactively."* (Emphasis added)

Thus, had the defendant timely raised his contentions, the last sentence of the *Lamb* opinion would have barred him from partaking of its benefits.

Further, in response to the Tenth Circuit's ruling, this Court spoke of the same and related topics on March 27, 1972, in Schaffer v. Green, 496 P.2d 375.

In *Schaffer,* supra, the Court stated:

"The opinion * * * erases any question concerning the validity of any conviction had upon a male child of the age of sixteen (16) or seventeen (17) without a juvenile hearing prior to the opinion of the Court of Appeals, 10th Circuit, and as well, any conviction * * between the 10th Circuit opinion and the date of this opinion. This be true even if the opinion of the Federal Court was treated as retroactive, rather than prospective, in application."

### V.

There remains but one contention, raised in both briefs of the defendant, untreated. The defendant contends that the punishment is excessive, not supported by the evidence, and given under passion and prejudice. In the initial brief, the defendant cites no authority to support his position, and in the supplemental brief he cites Gable v. State, Okl.Cr., 424 P.2d 433 (1967), which stands for the proposition that the punishment imposed must bear di-

rect relationship to the nature and circumstances of the offense committed.

The defendant has failed to point out the distinction between *Gable,* supra, where the jury was unable to fix punishment and left it to the court's discretion, and the instant case, where the court imposed the sentence and fine recommended by the jury.

■ It is well settled in Oklahoma that where the verdict imposed is within the limits of punishment fixed by the Legislature, in this case seven (7) years imprisonment and a Five Thousand Dollar ($5,000) fine, that the jury verdict should not be disturbed. Further, excessiveness of punishment must be determined by a study of the facts and circumstances in each case, and we do not have the power to modify sentence, unless it shocks the conscience of this Court. Johnson v. State, Okl.Cr., 386 P.2d 336 (1963).

■ While it cannot be said that the Court's conscience is shocked in this instance, upon consideration of all the facts and circumstances surrounding this conviction, as well as a thorough reading of both transcripts, it is the opinion of this Court that justice would be better served if the sentence imposed in this case is modified from seven (7) years to four (4) years imprisonment, and the fine from Two Thousand Five Hundred Dollars ($2,500) to Five Hundred Dollars ($500), and as modified and free of any error requiring reversal, the judgment and sentence is affirmed. Modified and affirmed.

BUSSEY, P. J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge (concurring in part and dissenting in part).

Insofar as this conviction is to be affirmed, I concur in that part that modifies the sentence imposed. However, notwithstanding the provisions of 63 O.S.1971, § 2–601, I believe this sentence should be modified to one year imprisonment, as presently provided for the first conviction for possession of marihuana, since it was not a final judgment when the law was changed.

I agree also, under the circumstances the officers acted within reason, when the defendant reached under his car seat. At that moment they had no reason to believe he was reaching for his drivers license. He could have been reaching for a weapon, which provided the special circumstances referred to in Lawson v. State, supra.

It strikes me that the finding of a marihuana "roach", one quarter of an inch long, more nearly indicates proof of "the use of marihuana," than it does possession. One quarter of an inch is approximately six millimeters, which doesn't represent much marihuana. The record also reflects that the seeds were not absolutely proved to be marihuana seeds. The bureau expert did not test them, except to examine them under a microscope; and he related that other seeds do resemble marihuana seeds.

With reference to Part IV of the majority opinion concerning the defendant's question of jurisdiction, jurisdiction of the subject matter may be raised at any time, even on appeal. Therefore, I shall reaffirm my position expressed in Schaffer v. Green, supra, in that I believe the Schaffer decision is incorrect; and I feel no special compulsion at this time to change my position, except to admit that the majority of this Court has decided the 1910 Statute, 21 O.S. § 152, is applicable.

Therefore, I concur in that part of the decision which modifies the sentence, but I respectfully dissent to the question of jurisdiction.