Patrick Jay LUCAS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17934.

Court of Criminal Appeals of Oklahoma.

May 4, 1973.

Eversole, Settle & Cook, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

BUSSEY, Judge.

Appellant, Patrick Jay Lucas, hereinafter referred to as defendant, was charged and tried in the District Court of Muskogee County, Case No. CRF–72–29, with the offense of Murder. He was found guilty of Manslaughter in the First Degree and punishment fixed at thirty (30) years imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Roy Hall testified that on the evening of January 12, 1972, he and Jake Bowers went to a basketball game in Summit, Oklahoma, and from there to a cafe bar, arriving at approximately 10:00 p.m. At approximately 11:30 p.m., the defendant, whom he had known for about eight years, arrived at the bar. The defendant had a little gun he was waving around and stated, "I am going to kill me some nigger tonight." (Tr. 69) The defendant made several trips to the table where Jake Bowers was sitting, but he was too far away to hear any conversation. Later, he observed Jake Bowers rush out the door and then heard a shot outside. He rushed out and observed the defendant lying on top of Bowers. He grabbed the defendant's arm and raised him up. The defendant walked away and went to his car. He testified that State's Exhibit 1 was similar to the gun the defendant had. He further testified that he had been with

Bowers all evening and that he did not see Bowers with a weapon.

Henry James Hall testified that he was in the club on the evening in question. While he was shooting pool he heard a commotion at the table in the corner. He walked over to Jake Bowers' table and asked the defendant, "What's wrong, man?". The defendant stated, "no S-O-B is going to hot breath over my shoulders, I'll kill me an S-O-B." (Tr. 90) He persuaded the defendant to go outside and talk over the situation. As the defendant was going out the door, he turned with his hand in his pocket and stated, "You're not going to set me up for none of your friends. I am not going to walk out this door and let some of your friends get me in the back." (Tr. 91) The witness attempted to reach in the defendant's pocket and the defendant knocked his hand away stating, "No, you are the son of a bitch that's going to get killed." (Tr. 92) He heard a noise from behind saying, "Let me through, let me through" and Jake Bowers rushed by. Bowers jumped at the defendant and the defendant shot him. He ran around the building because he did not want to get caught by any stray bullets. When he returned to the scene, the defendant was gone and he observed a gun laying on the ground. He testified that State's Exhibit 1 looked like the same gun used by the defendant. He testified that the gun was the only weapon he observed at the scene.

Billy Beasley testified that he was drinking beer inside the club on the evening in question when he heard a shot outside. He rushed out and observed the defendant with a gun in his hand lying on top of Bowers. He knocked the gun out of the defendant's hand. He testified that State's Exhibit 1 looked like the gun he knocked out of the defendant's hand. He testified that he did not see any type weapon on Jake Bower's person. Henry Hall picked up the gun and gave it to Oscar Crawford.

Oscar Crawford testified that he was the Constable of Summit, Oklahoma, and obtained a pistol from Henry Hall on the evening in question. He gave the gun to Deputy Jake Simmons.

Deputy Jake Simmons testified that he received a .22 caliber pistol from Oscar Crawford. He subsequently delivered the pistol to Investigator Johnny Thornton. He testified that State's Exhibit 1 was identical to the pistol he delivered to Thornton.

Ray Lambert, a firearms examiner for the Oklahoma State Bureau of Investigation, testified that he received State's Exhibit No. 1, the pistol, and State's Exhibit No. 2, a spent cartridge. He testified, over the objection of the defendant, that in his opinion the spent cartridge had been fired from the pistol.

John Thornton, Investigator for the District Attorney's office, testified that he received State's Exhibits 1 and 2 from Deputy Simmons. He gave the exhibits to Crime Bureau Agent Ted Lemke to deliver to Ray Lambert. He identified State's Exhibit 1 by identifying a mark he placed on the weapon.

Dr. Harvey Randall testified that in his opinion Jake Bowers died of a gunshot wound approximating the caliber of weapon as State's Exhibit No. 1. He testified that the gun was fired at a distance of less than three or four feet.

Florence Givens testified that she was at the club on the evening in question. During the course of the evening, the defendant gave her a .22 caliber pistol to keep for him. She kept it for about fifteen minutes until the defendant came back and got it. On cross-examination, she testified that Bowers and the defendant exchanged a few words. Someone led the defendant out the front door and Bowers went out the side door. In approximately five minutes, Bowers returned with a .38 caliber pistol. He appeared mad and asked where the defendant had gone. He ran out the front door with the pistol in his hand.

For the defense, Jacquelin Gaston testified that she was with Florence Givens in the club that evening. Bowers and the defendant exchanged words and the defend-

ant was led outside by some young men. Bowers went out the west door and returned in a few minutes with a gun in his hand. Bowers appeared to be in an angry mood and hurriedly went out the front door with the gun in his hand. A few seconds later, she heard a shot.

Mrs. C. P. Lucas, the defendant's mother, testified that the defendant had purchased a pistol approximately two to three months before the incident to protect her home from break-ins.

The defendant testified that he was at the club on the evening in question and while having a conversation with Florence, Jake Bowers got mad at him. They exchanged words and he told Bowers, "Well forget it. I'm going home." Henry James grabbed him and said he wanted to talk to him. As he was going out the door he noticed that Bowers had gone out the side door. After he got outside, he heard Bowers say, "Let me through, let me through, I'm going to kill . . . ." (Tr. 189) He turned around and observed Bowers jumping from the top step toward him. Bowers grabbed him with his left hand and he fired a shot. He testified that he shot because he felt his life was in danger, although he did not see a gun in Jake Bowers' hand. He testified that State's Exhibit No. 1 looked like his pistol and that someone either took the gun out of his pocket or it fell out. He denied that Bill Beasley knocked the gun out of his hand.

The first proposition asserts that the trial court erred in submitting the question of murder to the jury. Defendant argues that the State's evidence taken in the most favorable light, established that the deceased attacked the defendant and at its worse, the evidence can only be said to show a violation of 21 O.S. § 711, Manslaughter in the First Degree. The record reflects that when a similar proposition was presented to the trial court at the conclusion of the evidence, the court stated:

"At the end of the State's testimony I was firmly convinced I was going to take it away from them on the grounds of punishment on Murder and instruct them on Manslaughter First Degree at the best, and lesser included Manslaughter in the Second Degree. But he testifies of his own knowledge, I mean of his own free will, that he did not even know Jake Bowers, that Jake Bowers and the State's witnesses testified that Jake carried a gun generally in his car; and some of the witnesses, one of the State's witnesses and one of your main witnesses said that Jake went to the car and got the .38 and came out the front door. There's absolutely too much conflict here and in the testimony and that's the duty of the jury to consider these facts and who is lying and who is not lying. I doubt very seriously that this jury will find him guilty of Murder and there's a possibility they will not find him guilty of Manslaughter in either the First or Second Degree; but gentlemen, I'm going to leave it to the jury. * * *" (Tr. 209)

▉ We are of the opinion that the trial court properly submitted the question of Murder to the jury. The evidence on behalf of the State, adduced that the defendant came to the club armed with a pistol and made at least two statements that he was "going to kill some son of a bitch tonight" thus establishing evidence of a premeditated design to effect death. The defendant denied making such threats and testified that he fired only in self defense. Because of the conflict of the evidence, we are of the opinion that the trial court properly instructed the jury as to the law applying to the elements of Murder and self defense.

The second proposition contends that the trial court erred in admitting State's Exhibit 1, the pistol, and State's Exhibit 2, the cartridge, in evidence. Defendant first argues that the State's witnesses failed to positively identify the State's Exhibit 1 as the pistol found at the scene. The record reflects that each of the witnesses testified to the effect that the pistol was similar or looked like the same one. In dealing with a similar proposition in Richmond v. State,

1391

Okl.Cr., 456 P.2d 897, we stated in the fifth paragraph of the Syllabus:

"It is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection of the article sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility."

 We concur with the defendant's contention that State's Exhibit 2, the cartridge, was improperly admitted. Investigator John Thornton testified that he received the cartridge from Deputy Sheriff Jake Simmons, which was subsequently delivered to the State Crime Bureau. Ray Lambert testified that in his opinion the cartridge was fired in the pistol. The record is devoid of any testimony where the Deputy Sheriff obtained the cartridge. We are of the opinion that the same constitutes harmless error and that the defendant was not prejudiced by its admission into evidence in view of the uncontested testimony that the victim died of a gunshot wound.

The final proposition asserts that the Assistant District Attorney made highly inflammatory and prejudicial remarks in the closing statement influencing the jury to return an excessive verdict. We have carefully examined the closing argument and observed that on only two occasions did the defendant object to remarks by the Assistant District Attorney. On one occasion the trial court sustained defendant's objection and, at defendant's request, admonished the jury to disregard the statement. No admonishment was requested on the second objection. We have previously held that when an objectionable statement is made by the prosecuting attorney, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the

improper statement and in the event the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the motion for new trial. When this is not done, the matter cannot be presented for the first time in the Motion for New Trial and the Petition in Error on appeal. See Overstreet v. State, Okl.Cr., 483 P.2d 738.

In conclusion, we observe that considering the entire record and all the circumstances, that justice would best be served by modifying the judgment and sentence. See Gable v. State, Okl.Cr., 424 P.2d 433. The judgment and sentence is accordingly modified to a term of twenty (20) years imprisonment, and as so modified, is affirmed.

BLISS, P. J. and BRETT, J., concur.