Steve KUERSCHNER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–16132.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1972.

Rehearing Denied March 13, 1972.

Don Hamilton, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for defendant in error.

## OPINION

SIMMS, Judge.

Steve Kuerschner, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County, Oklahoma, with the offense of Sale of Marijuana, and was later tried, found guilty and convicted by a jury. His punishment was fixed at a term of three (3) years in the state penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Midwest City Police Officer Robert W. Kellington testified that on March 12, 1970, he had occasion to be at Area E of the Tinker Field residential area, more specifically the address of 5129 Chenault Street, the residence of the defendant. Kellington testified at the time that he was working on an undercover narcotics investigation for the Midwest

City Police Department and that he drove to the Kuerschner residence with three other subjects in the car, all of whom were white males. Kellington testified one of the three young males went to the Kuerschner residence, advised Kuerschner that they were waiting for him outside; that Kuerschner came from the residence and got into the car with the officer, at which point Officer Kellington purchased a baggie of marijuana, referred to as "keef," for the price of $7.00.

Kellington identified the defendant in the courtroom as the person who had sold him the marijuana, stated that after the sale he transferred the marijuana to two other members of the Midwest City Police Department after marking it for identification, and also testified that the Chenault Street address was within Oklahoma County.

On cross-examination Kellington testified that one of the other three young males in the automobile at the time of the sale was an individual by the name of Alex Cardenas. He stated Cardenas was acquainted with individuals in the narcotics traffic and assisted the Midwest City Police Department in that narcotics investigation. He testified the other two boys were acquainted with Kuerschner and Cardenas and that after the sale they drove the two boys back to the vicinity of the Tinker Field Bowling Alley where they dropped them off.

John McLaughlin, State Bureau of Investigation Chemist, testified that on March 19, 1970, a packet of evidence was received by his laboratory from the Midwest City Police Department and subsequently on March 30, 1970, he removed that packet from the evidence locker, examined the contents thereof both chemically and microscopically, and found the same to be wholly from the plant Cannabis Sativa, also known as marijuana. The chemist identified the package introduced into evidence as State's Exhibit Number One.

Alex Cardenas was the first witness called for the defense. Cardenas testified he was a twenty-year-old military dependent living on Tinker Air Force Base; that he is acquainted with one Robert Kellington and has participated with him in a narcotics investigation. His testimony concerning the marijuana buy at the Kuerschner residence was substantially the same as that of Officer Kellington; however, Cardenas refused to answer several questions with regard to personal involvement in narcotics traffic by taking the Fifth Amendment. He testified he did not purchase any marijuana on the date in question from the defendant. He also testified he made the initial contact with Kuerschner to set up the buy for Kellington. Cardenas also testified he had been convicted of misdemeanor thefts in the State of Texas and was on probation both at the time of trial and the time of the offense. The defendant also called John Ross and Vick Dragony, who testified they were the other two individuals in Kellington's car at the time the marijuana buy took place. They testified they were both military dependents who lived on Tinker Air Force Base and that they were acquainted with Bobby Kellington, Alex Cardenas and the defendant. Both boys' testimony with regard to the marijuana buy was substantially the same as that of Officer Kellington and Cardenas with the exception that both boys testified the transaction took place between the defendant and Cardenas rather than between the defendant and Kellington.

Rebuttal testimony was offered on behalf of the State, that the two witnesses Dragony and Ross talked with Cardenas in the court house during the trial and discussed the facts substantially as Cardenas had testified to them. Rebuttal offered on behalf of the defendant was to the effect that such a conversation had not taken place.

The defendant cites seventeen (17) propositions of error. However, for the pur-

pose of brevity, and inasmuch as the defendant has consolidated some of his points, this Opinion will deal with five basic propositions.

The first proposition to be dealt with is that of pre-indictment delay or lack of a speedy trial. The Record reflects the alleged offense was committed on March 12, 1970, and that the Information upon which the arrest warrant was issued for the defendant was not filed until April 9, 1970. The defendant contends this is an unconscionable and prejudicial delay.

■ We found this contention to be completely without merit inasmuch as after searching the Record it is the opinion of this Court that the defendant has failed to meet the burden assigned to him of showing what prejudice, if any, attached to him as a result of this delay. The case of United States v. Deloney, 389 F.2d 324 (7th Cr., 1968), cited by the defendant states that:

"* * * an accused must show he has been prejudiced by the delay. Then, the burden is on the Government to show the delay was the result of a valid police purpose."

■ Additionally, this Court has held that where the contention is made by the defendant that his right to a speedy trial has been denied, the burden is upon him to show that the delay was the fault of the State. Ex parte Wilkerson, 73 Okl.Cr. 32, 117 P.2d 172 (1941).

The next basic proposition cited as error by the defendant is a lack of jurisdiction. It appears from the Record that the alleged offense and the arrest of the defendant all took place on Tinker Air Force Base, which, although it is located within the confines of Oklahoma County, is alleged by the defendant to be part of a federal reservation and therefore without the jurisdiction of the State of Oklahoma.

This particular question was briefed extensively by both sides, and this Court finds the jurisdiction was, in fact, at the time of the offense and the arrest vested wholly and completely in the State of Oklahoma.

■ The brief of the Attorney General is abundantly clear in setting forth the controlling statutes and case law insofar as jurisdiction over Area E of the Tinker Air Force Base is concerned. Counsel for the defendant relies wholly upon Oklahoma Statutes as the basis for his jurisdictional arguments; however, he failed to cite those Federal Statutes and the cases which construe those Federal Statutes subsequent to the passage of the Oklahoma law upon which he relies. The controlling statutes appear to be 42 U.S.C. 1964, §§ 1501, 1547, and 50 F.C.A. 1964, § 175. Additionally, it appears from the case law that for the United States Government to have exclusive jurisdiction over lands previously acquired, it is necessary that a formal agreement be entered into between the United States Government and the State of Oklahoma wherein the United States Government formally accepts a cession of jurisdiction from the State. See Johnson v. Morrill, 20 Cal.2d 446, 126 P.2d 873 (1942).

■ Nowhere in the Record presented to this Court for consideration does there appear any agreement or formal document indicating that jurisdiction was ever transferred from the State of Oklahoma to the United States Government, or that the United States Government ever acquired or accepted complete jurisdiction over the area in question. Therefore, this Court can only conclude that at the time of the offense and the arrest, the State of Oklahoma had both civil and criminal jurisdiction in and upon the area designated as Tinker Air Force Base housing area (Area E).

The defendant next contends that the trial court erred in refusing to give defendant's requested Instructions numbered

One and Two. The defendant contends that the Instruction given by the court, taken from the Federal Instruction on Unlawful Entrapment found at 27 F.R.D. 39, No. 4.12, does not adequately or accurately reflect the defense as entrapment sought to be advanced by the defendant.

■ We find this contention to be without merit and observe the Instruction offered by the trial court clearly states the law of the State of Oklahoma with regard to entrapment.

■ Defense counsel cites no authority for his position on the requested Instruction other than Beasley v. State, Okl.Cr., 282 P.2d 249 (1955), from which the substance of his Instruction was taken. This Court has long held that we will not search the books for authorities to support the defendant's arguments, particularly where the precise point is not even raised. Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969).

■ Defendant next contends the decision in this case should be reversed because of prejudicial remarks of the prosecutor made in closing argument. The defendant classes as "unbridled use of inflammatory statements," that the prosecutor commented concerning the defendant's admissions through his witnesses. The Record reflects the defendant did not take the stand and testify, and also that none of the testimony put on by the State and defense with regard to the defendant's part in the sale was ever contradicted; only the identity of the purchaser was challenged. The record reflects that at the close of the State's closing argument the defendant moved for a mistrial because the District Attorney on three different occasions made comments with regard to the defendant's admission through his witnesses and the motion was taken as an objection and overruled, the court finding that the comments were fair and reasonable comments based upon the evidence and reasonable inferences to be drawn therefrom. We note

again that the defendant cites no authority for this assertion of error; and would point out that the guidelines for making proper objections in this area are settled law in the State of Oklahoma.

■ Objections must be timely made to improper argument, and the defendant must at that point in the argument go further and move the objectionable argument to be stricken from the jury's consideration, unless the remarks were such that they could not be cured by their withdrawal from the jury. We observe from the record in this case that no such objection was made until the arguments were completed, and that the defendant did not request the remarks be stricken, thereby preserving the matter for consideration by this Court. See Gaddis v. State, Okl.Cr., 447 P.2d 42 (1968).

Finally, the defendant complains it was error on the part of the trial court in refusing to hear testimony from the defendant and his parents at the time of sentencing as to the propriety of a suspended sentence. He cites as authority for that proposition 22 O.S.Supp.1968, § 991a and 22 O.S.Supp.1969, § 994.

■ Section 991a deals with the powers of the trial court following conviction, and in our reading of that statute, we find nothing which would compel the trial judge to hear evidence or argument in mitigation of punishment. The granting of a suspended sentence under this section is purely discretionary with the trial court, and absent a showing of abuse of that discretion, the trial court's ruling will not be disturbed on appeal. Where the court *wishes* further information before imposing sentence, it *may* request a pre-sentence investigation by the Pardon and Parole Board under the provisions of 22 O.S. Supp.1967, § 982.

■ With regard to defendant's reference to § 994, a simple reading of the statute, which commences with the words:

"After appeal, * * *" is sufficient to indicate the defendant's application for a suspended sentence under that section is obviously premature, although this Opinion will not preclude the defendant from seeking further relief along those lines. Nothing in the Record or the evidence indicates the trial court did anything but its duty in imposing the sentence as handed down by the jury, and therefore, we find the defendant's final contention to be without merit.

In conclusion, this Court observes that the Record is free of any errors that would justify modification of sentence or require reversal of the verdict. The judgment and sentence is affirmed.

BUSSEY, P. J., and BRETT, J., concur.