**Wayne MURDOCK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–18079.**

Court of Criminal Appeals of Oklahoma.

July 30, 1973.

George P. Walters, Broken Bow, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Charles P. Rainbolt, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Wayne Murdock, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of McCurtain County, Case No. CRF-72-15, for the offense of Murder. His punishment was fixed at life imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Imogene Noah testified that on February 5, 1972, she was employed as a bartender at the Green Door Tavern in Broken Bow. That evening the deceased, Miles Kennedy, and a friend came into the tavern to drink beer and play pool. Sometime later the defendant came into the tavern and sat at the bar with Betty Blankenship. Kennedy asked the defendant if "that was his wife" and defendant said yes. Kennedy asked "why didn't he take her home and let her sober up a little bit because if he didn't there was going to be some trouble." (Tr. 28) The defendant looked over at Betty and said "he was going to get his gun and blow his head off." Defendant walked out the front door, got in his pickup and drove around to the back. The defendant entered the backdoor with a shotgun. He yelled at Kennedy who was standing at the end of the bar, and the defendant shot him. The defendant reloaded the gun and turned to another patron, Judy Bridges, and demanded the baby. Mr. Adams came to the front door and the defendant pointed a gun at him and told him to back out. Defendant backed out the backdoor with the gun on his hip.

Betty Blankenship testified that she was in the bar on the evening in question with her mother and her baby. She testified that she had had quite a bit to drink and that the events were pretty fuzzy to her. She remembered hearing her mother yell "No Wayne, no" and she looked up and saw the defendant standing there with a gun and he shot a man. She testified that she did not know why the defendant shot the man. She admitted having lived together with the defendant, although they were not married.

Officer Mike Adams testified that he went to the Green Door Tavern at approximately 8:30 p. m. As he entered the tavern, the defendant pointed a twenty gauge shotgun at him and told him to get out. Defendant had a baby in his arms. He

backed out of the tavern and observed, through the window, a man laying behind the bar. He identified certain photographs as being true depictions of the scene as he saw it. Other police officers arrived and placed the defendant under arrest. The defendant was placed in a patrol car with Betty Blankenship. He reached inside the police car to turn the radio off and defendant asked him if the man was dead. Defendant then said "if he isn't, let me out and I will do it again." (Tr. 73)

Dr. L. L. Duncan testified that he performed a post-mortem on the body of Miles Eugene Kennedy. In his opinion the cause of death was a gunshot wound to the neck.

Officer Billy Frey testified that he observed the defendant backing away from the tavern in a pickup and placed him under arrest.

Rush Neurenberg testified that he was present in the tavern on the night in question. He heard a gunshot and observed defendant holding a gun.

Glen Dale testified that the tavern was located in McCurtain County.

The defendant did not testify nor was any evidence offered in his behalf.

■ The first proposition asserts that "Where the issue of present sanity of a defendant is raised, the trial court must order a sanity hearing." Defendant raised the issue of his present sanity at the time of trial through an affidavit and motion for continuance based on his lack of mental capacity. Defendant's counsel, as an officer of the court, testified that the defendant was not mentally able to proceed with trial and that he was not capable of contributing to his defense. In dealing with a similar proposition in Tucker v. State, Okl.Cr., 473 P.2d 332, we stated:

"This Court does not feel that the evidence was sufficient to cause a doubt to exist in the trial judge's mind, and therefore, did not abuse his discretion as set forth in Johnson v. State, 73 Okl.Cr. 370, 121 P.2d 625, where the Court said:

'[W]hile the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of defendant.'"

In the instant case defendant was committed to Eastern State Hospital at Vinita for observation on March 14, 1972 at the conclusion of the period of observation, defendant was found to know the difference between right and wrong and was able to assist in his defense. As in *Tucker*, supra, we are of the opinion that the evidence was not sufficient to cause a doubt to exist in the trial judge's mind as to defendant's sanity, and therefore did not abuse his discretion in refusing to grant the defendant a sanity hearing.

■ The second proposition contends that the trial court erred in overruling defendant's motion to dismiss in that he was denied a speedy and public trial. The record reflects the defendant was arrested February 5, 1972. On March 14, 1972, defendant was transferred to Eastern State Hospital for observation and returned on May 9, 1972. On May 22, 1972, defendant's preliminary hearing was held and the trial commenced on August 25, 1972. Defendant argues that during this period of time four jury panels were called and that defendant was thus denied a fair and speedy trial.

We observe that the first jury term commenced on February 7, 1972, and continued to February 18, 1972. The second jury term commenced on March 13, 1972, and ended on March 24, 1972. The third jury panel commenced on May 8, 1972 and ended on May 19, 1972. The fourth jury term commenced on June 5, 1972, and ended on June 16, 1972. It was thus readily apparent that because of the period of observation and the date of defendant's preliminary hearing on May 22, 1972, the earliest the defendant could have been tried would have been the June 5, 1972, jury term.

Defendant cites as authority 22 O.S.1971, § 812, which provides as follows:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the *next term* of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." (Emphasis added)

In dealing with a similar proposition in Broadway v. State, Okl.Cr., 494 P.2d 331 we stated:

" . . . In other words, the defendant contends the presence of a jury panel to try his cause constitutes a term of court, and a continuance beyond the period that particular petit jury panel is present, is a violation of a constitutional guarantee.

" 'Terms of court,' used as a measure to determine if a defendant has received a speedy trial, were legally abolished. It cannot be said each of the district courts of the State of Oklahoma may establish their own so-called 'terms of court' simply by the impanelling of a petit jury. The issue of speedy trial is discussed in Coggins v. Shumate, Okl.Cr., 401 P.2d 995 (1965), wherein this Court held:

'Generally speaking, a "speedy trial" is one conducted according to prevailing rules, regulations, and proceedings of law free from arbitrary, vexations and oppressive delays. The right does not require a trial immediately upon arrest, or the filing of an indictment or information; but requires that the trial be had as soon as reasonably possible, within the statutory requirements, without depriving the prosecution of a reasonable time to prepare for trial.' "

We are of the opinion that the three month delay after the preliminary hearing under the circumstances did not deprive defendant his right to speedy trial. Especially is this true in view of defendant's total failure to show how he was prejudiced because of the delay in trial from June to August. See Kuerschner v. State, Okl.Cr., 493 P.2d 1402.

■ The third proposition asserts that the trial court erred in allowing into evidence alleged statements by the defendant. Defendant argues that the trial court erred in allowing the testimony of Officer Adams as to the statement made by the defendant after the shooting in that the defendant had been placed under arrest and not advised of his Miranda warnings. We need only observe that there was no evidence showing that the defendant was ever interrogated before he made the incriminating statement. In Gibson v. State, Okl. Cr., 476 P.2d 362 we stated in the Syllabus:

"Even though in custody, voluntary statements made to police officials not the result of interrogation are admissible in evidence and are not in violation of Miranda requirements."

■ The fourth proposition asserts that the trial court erred in allowing into evidence six photographs of the deceased. Defendant first argues that the photographs were not properly identified. The record reflects that Officer Adams testified on direct-examination that he examined the photographs and that they were true and accurate depictions of the scene as he saw it. On cross-examination Officer Adams testified that he had not looked at all the pictures. Defendant argues that since the witness did not see all the pictures, he could not possibly have been qualified to testify that the pictures truly and accurately depicted the scene as he saw it.

The attorney general succinctly answers defendant's argument as follows:

"Even if it is assumed, for the sake of argument, that Adams looked at only *one* of the pictures before testifying that the picture accurately depicted the scene as he saw it, the other five pictures are also pictures of the decedent laying behind the bar; therefore all six pictures are sufficiently similar so that Mr. Adams' testimony that one picture accurately de-

picted the scene as he saw *should* suffice to allow into evidence the other pictures of the decedent laying behind the bar as well."

We concur that Adams' identification of the pictures was sufficient in view of defendant's failure to further cross-examine him as to which pictures he had not examined.

 Defendant next argues that the photographs were gruesome and highly prejudicial. In Hopkins v. State, Okl.Cr., 506 P.2d 580 we stated:

"It is within the discretion of the trial court to rule on the admissibility of evidence at trial and without a showing of severe prejudice to the defendant or breach of his fundamental rights, this Court will not reverse on such grounds. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166 (1951); Jackson v. State, 67 Okl.Cr. 422, 94 P.2d 851 (1932). As this Court stated in Born v. State, Okl.Cr., 397 P.2d 924 (1964):

'If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must, of course, be excluded. On the other hand, if the evidence has a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissable [sic], even if it is gruesome and may incidently [sic] arouse the passions of the jury.'

We therefore find this proposition to be without merit.

The final proposition contends "Where the record reflects that notice of a prosecution witness was not served upon the defendant or his attorney then the testimony of that witness is inadmissible over the objections of defense counsel." Defendant argues that notice of witness Dr. L. L. Duncan was not served upon defendant or his attorney. We need only observe that the record reflects that on July 21, 1972, or more than one month prior to the trial, de-

fendant was served with a notice that Dr. L. L. Duncan would be called to testify for the State. Record page 19.

In conclusion we observe that the record is free of any error which would justify modification or require reversal and that the evidence of defendant's guilt is overwhelming. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.