Gordon Gene **HART**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

**No. F-74-808.**

Court of Criminal Appeals of Oklahoma.

May 7, 1975.

Reid K. Mayfield, Atoka, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. Mc-Curdy, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Gordon Gene Hart, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Atoka County, Case No. CRF–73–72, for the offense of Escape From a State Penitentiary, in violation of 21 O.S.1971, § 443. His punishment was fixed at a term of two (2) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Robie Battles testified he was the Assistant Records Clerk at the Oklahoma State Penitentiary, located at McAlester, Oklahoma. Defendant, Gordon Gene Hart, was committed to the Okla-

homa State Penitentiary at McAlester on a Judgment and Sentence upon a plea of guilty from the District Court, Tulsa County, Oklahoma, for a term of ten (10) years for the crime of Burglary, First Degree. On October 12, 1973, defendant was confined at the McLeod Honor Farm.

Charles Davidson, Lieutenant at the McLeod Honor Farm in charge of security, testified that on October 12, 1973, he discovered that two inmates and the prison's wench truck were missing from the Honor Farm. Upon discovering the defendant and another inmate missing, he notified the Oklahoma State Highway Patrol, the local Sheriff's Office, and the local Police Department. Davidson further testified that the next time he saw the defendant and the other inmate was at the City Marshal's Office in Boswell, Oklahoma.

Frank Edge, City Marshal of Boswell, Oklahoma, testified that on October 12, 1973, he apprehended two missing inmates who were driving a prison wench truck. They were apprehended approximately six miles south and one mile east of Boswell, Oklahoma. Edge identified the defendant as one of the two inmates he apprehended on October 12, 1973. He (Edge), later that same day, turned the two inmates over to the custody of the officers from the McLeod Honor Farm.

Pete Anderson, Correction Officer at the McLeod Honor Farm, testified that on October 12, 1973, he participated in a search for two inmates missing from the Honor Farm. Anderson further testified that he took the two inmates into custody from the City Marshal of Boswell, Oklahoma. Defendant was one of the inmates which he took into custody.

The defendant testified in his own behalf that he did leave the Honor Farm, but only because he was forced to leave by inmate Johnny Miller. He and Miller were apprehended by the City Marshal of Boswell, Oklahoma.

Johnny Miller, an inmate at the Oklahoma State Penitentiary, testified that on October 12, 1973, he was preparing to escape from the McLeod Honor Farm when the defendant walked up and observed that he was preparing to escape. He then forced the defendant, by sticking a screwdriver in his side, to accompany him in his bid to escape in the prison farm wench truck. Miller, at the time of escape, was serving a term of thirty (30) years and a term for life imprisonment. Miller further testified that he knew the defendant but they were not buddies.

Charles Davidson was recalled in rebuttal and testified that he had observed the defendant and Miller prior to their escape. He stated that they appeared to be friends and "chummed up to eat together, and things like that."

Defendant's first proposition asserts the trial court erred in overruling defendant's Motion to Dismiss by reason of denial of a speedy trial. Defendant contends that his case was ready for trial on April 2, 1974, and a jury panel was present, but his case was not tried until the next jury term and, therefore, he was denied the right to a speedy trial.

The record reveals that the defendant was arrested on October 12, 1973, and charged by Information for the crime of Escape From a State Penitentiary on October 15, 1973. Defendant was bound over for trial on December 6, 1973. On February 20, 1974, defendant filed a Motion for Psychiatric Examination, same being sustained on February 22, 1974. Evaluation of psychiatric examination was received on March 19, 1974. On April 15, 1974, all parties appeared and, without objection by the defendant, the court set defendant's trial for May 14, 1974. Trial in the case was had on May 14, 1974. Nowhere in the record before this Court do we find that the defendant announced ready for trial on April 2, 1974, nor does the record reveal that there was a jury panel available on this date to try the defendant's case. However, even assuming arguendo that defendant did announce ready for trial on April 2, 1974, and there was a jury panel

available to try him, the defendant has failed to meet the burden assigned to him of showing that the delay was the fault of the State and what prejudice, if any, attached to him as a result of this delay. See, Kuerschner v. State, Okl.Cr., 493 P.2d 1402 (1972) and Ex parte Wilkerson, 73 Okl.Cr. 32, 117 P.2d 172 (1941). Further, this Court in Murdock v. State, Okl.Cr., 512 P.2d 1392 (1973), in dealing with a similar proposition and citing with approval Broadway v. State, Okl.Cr., 494 P.2d 331 (1972), stated:

"In dealing with a similar proposition in Broadway v. State, Okl.Cr., 494 P.2d 331 we stated:

" ' . . . In other words, the defendant contends the presence of a jury panel to try his cause constitutes a term of court, and a continuance beyond the period that particular petit jury panel is present, is a violation of a constitutional guarantee. " ' "Terms of court," used as a measure to determine if a defendant has received a speedy trial, were legally abolished. It cannot be said each of the district courts of the State of Oklahoma may establish their own so-called "terms of court" simply by the impanelling of a petit jury. The issue of speedy trial is discussed in Coggins v. Shumate, Okl.Cr., 401 P.2d 995 (1965), wherein this Court held:

" ' "Generally speaking, a 'speedy trial' is one conducted according to prevailing rules, regulations, and proceedings of law free from arbitrary, vexatious and oppressive delays. The right does not require a trial immediately upon arrest, or the filing of an indictment or information; but requires that the trial be had as soon as reasonably possible, within the statutory requirements, without depriving the prosecution of a reasonable time to prepare for trial." ' "

We therefore find this proposition to be without merit.

Defendant's second proposition asserts the trial court erred in denying his Motion for Mistrial based on the fact that a uniformed, armed guard was present in the courtroom throughout the trial of his case.

■ The record reveals that the first time the defendant objected to the uniformed guard's presence was after both the State and the defendant rested. Therefore, it is our opinion that any error was waived for failure to timely object to the presence of the uniformed officer. Further, the defendant has failed to show how he was prejudiced. See, Snow v. State of Oklahoma, 10 Cir., 489 F.2d 278 (1973). In the instant case there was no indication during the trial that defendant was in custody of the uniformed officer, or that he was in shackles, or that anything occurred during the trial to indicate the defendant was in custody of the uniformed officer. The requiring of the presence of a peace officer in the courtroom during a criminal trial for the protection of all concerned is within the sound discretion of the trial court. See, Snow v. State, Okl.Cr., 453 P. 2d 274 (1969) and Snow v. State of Oklahoma, supra, and cases cited therein.

Finding no abuse of discretion in the instant case, we find this proposition to be without merit.

Defendant's final proposition asserts error in the prosecutor's closing argument to the jury. Defendant contends under this proposition that it was error for the trial court to allow the prosecutor to refer to his previous convictions during the State's closing argument to the jury.

■■ We find no error in the prosecutor's reference to defendant's previous convictions as the defendant took the stand and on direct examination admitted the previous convictions referred to by the prosecutor. However, we do find that at one point in the prosecutor's closing argument he attempted to define the elements of First Degree Burglary to the jury. An objection was made by the defense attorney and the objection was properly sustained by the trial court. We find that this argument was improper, but not suffi-

cient to require reversal for the following reasons:

1. Proof of defendant's guilt was overwhelming;

2. Defendant received the minimum punishment provided by law; and,

3. The trial court sustained defendant's objection to this line of argument and did not allow the prosecutor to continue defining the elements of First Degree Burglary.

In the case of Severs v. State, Okl.Cr., 477 P.2d 695 (1970), this Court stated:

". . . this Court is committed to the rule that misconduct by the prosecuting attorney is not reversible error where the proof of the defendant's guilt is overwhelming and the record does not indicate that the misconduct was prejudicial so as to substantially affect the jury's finding." (Citations omitted)

It is therefore our opinion that the judgment and sentence appealed from should be, and the same hereby is, affirmed.

BRETT, P. J., and BLISS, J., concur.