**Marvin Richard LEE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–264, F–76–424.**

Court of Criminal Appeals of Oklahoma.

Feb. 11, 1977.

As Corrected March 7, 1977.

Richard A. Hoffman, Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Marvin Richard Lee, hereinafter referred to as defendant, was charged, tried and convicted in the Tulsa County District Court, Case No. CRF-75-683 for the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 801. Pursuant thereto the jury fixed his punishment at a term of fifty (50) years' imprisonment. The defendant was also convicted upon pleas of guilty in the Tulsa County District Court, Case No. CRF-75-681, for the offense of Unlawful Possession of Marijuana, in violation of 63 O.S.1971, § 2-402B, ¶ 2, and in CRF-75-682, for the offense of Feloniously Carrying a Firearm, in violation of 21 O.S. 1971, § 1283. His punishment was fixed by the trial court in CRF-75-681 at six (6) months' imprisonment, to run concurrently with CRF-75-683. From said judgments and sentences in the aforesaid cases the defendant has appealed to this Court and, consistent with the request of the defendant, all three cases were consolidated for appeal purposes by order of this Court.

■ We first note that the defendant's convictions in CRF-75-681 and CRF-75-682 were sustained upon pleas of guilty and thus any attempted appeal must comply with 22 O.S.1971, § 1051 and Rule 3 of the Rules of this Court. We need only observe that the purported appeal from these convictions has not been perfected within the statutory prescribed time for an appeal from a plea of guilty by certiorari and thus the instant appeal insofar as it pertains to these cases will be dismissed. Only the defendant's conviction in CRF-75-683 will be reviewed by this Court.

The State's first witness Terry Laird testified that he was employed as a clerk at Fast Eddy's Food Store in Tulsa, Oklahoma, that he was working at the store between the hours of 6:00 and 7:00 a. m. on March 27, 1975. He stated that at approximately 6:30 a. m. two men walked into the store, and one of the men carried a small automatic pistol in his hand. The witness also stated that he was the only employee on duty at that time and that the entire interior of the store was well-lighted. He then gave a general description of the two men, stating that they were both black men and wore leather jackets. He testified that the man with the gun grabbed him by the collar, stuck the gun to his eye and told him to open up the cash register. The witness opened the cash register, and the man took all of the bills out of the witness' hand and also took a considerable amount of quarters. The witness identified the two defendants in the courtroom as the same two persons who robbed him on March 27, 1975, one of which was the defendant, Marvin Lee. The witness identified State's Exhibit No. 2, as the coat similar to the one that defendant was wearing on the morning of March 27, 1975. He also identified State's Exhibit No. 3, as a weapon similar to the type used in the robbery, a dark automatic pistol.

Mr. Laird testified that he had seen the two persons who had committed the robbery in the store approximately one week prior to the robbery and that they had left in a white over red 1969 Chevrolet. He also stated that he was interviewed by Officer Charles Sasser, of the Tulsa Police Department, on the morning of March 28, 1975, concerning the robbery. Mr. Sasser showed Mr. Laird a group of photographs from which Mr. Laird selected a photograph of the defendant. The next day Mr. Laird identified the defendant in a line-up.

On cross-examination he testified that on the day after the robbery he went with

Officer Sasser and identified a white over red automobile in front of Tulsa University Library, the same automobile that he had seen a week prior to the robbery.

The next witness called by the State was Mr. Charles Sasser, who stated that he was a police detective with the robbery/homicide division of the Tulsa Police Department. On March 28, 1975, he was notified of the armed robbery at Fast Eddy's Food Store and given information that indicated that the suspects were driving a white vinyl over red 1969 Chevrolet. He ran a computer check on vehicles that matched this description and found five vehicles owned by black men. One of these vehicles was registered in the name of the defendant, and it was discovered that he had lived in the area where the robbery occurred. Following a stake-out of the car, which was found parked at Tulsa University, detective Sasser arrested the defendant and searched the vehicle, finding a .25 caliber automatic pistol and several baggies of marijuana. He identified State's Exhibit No. 3, as the pistol which he found in the vehicle. He also identified State's Exhibit No. 2, as the black leather coat worn by the defendant when he was arrested.

Detective Sasser stated that he read the Miranda warnings to the defendant.. He also stated that defendant did not ask to see an attorney. As the defendant was riding to the police station with detective Sasser he made several incriminating statements. According to the witness, defendant asked him how long he had been chasing him and denied carrying the gun into the store. The defendant stated that his partner was named Glenn or Lynn and also that he had been in the store a week before the robbery, driving a white over red Chevrolet.

The State rested.

The first witness for the defense was Beverly Lee, wife of the defendant, who testified that her husband was at home on the morning of March 27, 1975. Mrs. Lee stated that her children and Donald Rivers, a nephew, were also in the home on that date. Mrs. Lee stated that her husband did not leave home on March 27, 1975, until approximately 12:00 p. m., when he left with Donald Rivers.

The next witness for the defense was Sullivan Chaney, who stated that he was a friend of the defendant and lived immediately next door to him. He testified that he took his wife to work on the morning of March 27, 1975, and returned home at approximately 6:00. He also stated that approximately 10 or 15 minutes later he heard a car horn blowing. Mr. Chaney said that he noticed a car in front of the defendant's house, that he saw a man named Truman who owned the car, and that he saw the defendant's car.

On cross-examination the witness testified that he had been convicted of burglary in the second degree.

The next witness called on behalf of the defendant was Truman Davidson. Mr. Davidson stated that he was employed by the refuse department of the City of Tulsa. He testified that he had left his hard hat at the defendant's residence on the evening of March 26, 1975, and that he returned the next morning to retrieve the hat. He further testified that he found the defendant at his residence on that morning.

The next witness for the defense was Donald Rivers, who testified that the defendant was his uncle. He further testified that he spent the evening of March 26, 1975, at his uncle's house and that the defendant was there when he awoke in the morning. He testified that the defendant took him to school at approximately 12 noon.

On cross-examination Mr. Rivers testified that he awoke at approximately 10:00 a. m. on the morning of March 27, 1975.

The defendant's testimony established he had a previous conviction for unlawful possession of marijuana which was a felony at the time of his conviction. He stated that he did not rob Fast Eddy's Food Store, but that on the morning of March 27, 1975, he was at home with his wife, children and nephew. On cross-examination the defendant denied that he had any marijuana with

him on the date of his arrest, and that the gun which Officer Sasser found in his car did not belong to him but belonged to Price Hamilton. He stated that he did not ask Officer Sasser how long he had been chasing him, he denied telling him who his partner was and he also denied making the other statements attributed to him by Officer Sasser.

The defense next called Price Hamilton. He testified that he was unemployed and that he left some marijuana and an automatic pistol in the defendant's car. When presented with the gun that was found in the defendant's car, he said that it was not the gun he had left in the car.

The witness stated on cross-examination that he did not leave the gun in the defendant's car which was found by Officer Sasser. He said that he had left some marijuana in the defendant's car at one time, but he was not sure of the date.

The defense rested.

The State then called Charles Sasser as a rebuttal witness. He testified that on March 28, 1975, at the time of the defendant's arrest he discovered a brown paper bag containing marijuana and a gun. He stated that he discovered one bag of marijuana in the defendant's coat pocket and another bag of marijuana where the defendant had been sitting in the police car.

Then the State rested.

The defendant stipulated that on May 28, 1971, he was convicted of the crime of unlawful possession of marijuana which was a felony at the time.

■ In his first assignment of error the defendant asserts that the jury trial in Case No. CRF–75–683 should have been declared a mistrial on the grounds that the jury was tainted by a discussion held between an individual and a member of the jury. A member of the jury, Mr. Briggs, stated to the trial court that he had overheard a discussion about the defendant in the hall of the courtroom during a recess. He said that an elderly black man, purportedly a relative of the defendant, stated that the defendant had a wife and two children and

was supposed to have been at home at the time of the robbery. The juror testified that this incident did not affect his ability to be impartial during the trial. The record clearly reflects that no attempt was made to influence the juror, juror Briggs walked up to the group of people and merely overheard the conversation.

The defendant moved for a mistrial, contending that there had been a violation of 21 O.S.1971, § 388, which states:

"Every person who attempts to influence a juror, or any person summoned or drawn as a juror, or chosen as arbitrator or appointed a referee, in respect to his verdict, or decision of any cause or matter pending, or about to be brought before him, either:

"1st, By means of any communication oral or written had with him, except in the regular course of proceedings upon the trial of the cause;

"2nd, By means of any book, paper, or instrument, exhibited otherwise than in the regular course of proceedings, upon the trial of the cause;

"3rd, By means of any threat or intimidation;

"4th, By means of any assurance or promise of any pecuniary or other advantage; or,

"5th, By publishing any statement, argument or observation relating to the cause, is guilty of a misdemeanor."

Upon hearing the evidence and perusing 21 O.S.1971, § 388, the trial court declared that there was no attempt to influence a juror, and the motion for mistrial was denied. We have carefully examined the record and agree that there was not an attempt to influence the juror; there was no violation of the statute. Therefore, we find that the first assignment of error has no merit.

■ In his second assignment of error the defendant contends that the trial court erred in Case No. CRF–75–683 by allowing Mr. Terry Laird to testify for the reason that Mr. Laird was mentally incompetent at the time of trial. A hearing was held outside the presence of the jury to determine

the competency of Mr. Laird, where it was determined that he voluntarily committed himself for treatment of alcoholism at Eastern State hospital on January 13, 1975. He testified that he was released after 29 or 30 days, and that he has had no problems with alcohol since his release, which was approximately 8 months prior to the trial. Upon hearing the evidence, the trial court gave the following ruling:

"And in this case after observing the demeanor of the witness on the stand and after listening to the testimony of the witness the Court would find that at the present time that the witness is of sound mind, does understand the nature of the oath and would hold that he would be a competent witness in which to offer testimony before this jury. It will be up to the jury to take up the weight of which they want to give that testimony but the witness appears from observing his demeanor on this stand and his response to the questions elicited by the State and the defendant that he is of sound mind at the present time even though he has been previously adjudicated to be incompetent, or to be mentally ill, and the Court would so hold and we will proceed with his testimony."

In *Watkins v. Watkins,* 206 Okl. 589, 245 P.2d 434 (1952), the Oklahoma Supreme Court faced the question of the competency of a witness to testify who had been adjudged to be an insane and incompetent. The Court noted:

"When a court finds that at the time a person was produced as a witness, such person was of sound mind, fully understood the obligations of an oath, and capable of giving correct accounts of the matters at issue, such person is not an incompetent witness because previously had been adjudged incompetent."

See, *Tilford v. State,* Okl.Cr., 437 P.2d 261 (1967).

It is a well established rule that the admissibility of testimony of a witness challenged on the ground of incompetency is within the sound discretion of the trial court and we will not reverse a decision of the trial court unless there is a clear abuse of discretion. See, *Beard v. State,* 37 Okl.Cr. 62, 256 P. 354 (1927), and *Miller v. State,* 49 Okl.Cr. 133, 295 P. 403 (1930). After closely examining the record, we find that the trial court did not abuse its discretion by permitting Terry Laird to testify. We therefore hold this proposition to also be without merit.

■ In his next assignment of error the defendant argues that the search of the vehicle registered to the defendant was illegal because it was done without a warrant and did not fall under any of the exceptions to the general rule that any search must be made with a warrant. We disagree. The warrantless search of the automobile was justified as a search incident to arrest. Officer Sasser had probable cause to arrest the defendant for the crime of armed robbery. Prior to the arrest, Officer Sasser had obtained a description of the man who committed the armed robbery from an eyewitness and also a description of his car. When a photograph of the defendant was shown to the witness, he identified him as the one who committed the crime. Hence, when Officer Sasser saw the defendant and another man in the car, he had probable cause for arrest. Officer Sasser, acting alone, followed the car until it stopped. Two men, one of whom was the defendant, exited from the vehicle. The officer frisked both men, handcuffed defendant, and then he searched the vehicle. Officer Sasser testified that he searched the vehicle to determine if there were any weapons or anything which would help the defendant escape. It is important to note that the police officer was alone with two persons and that the man that was with the defendant was wanting to get some books and some other items from the vehicle. It is established that a police officer must act to protect himself and is justified in searching the arrestee and the area within his immediate control for weapons or evidence which could be destroyed. See, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The search of the car revealed a .25 caliber black automatic pistol which was loaded with seven bullets. This was found in a sack underneath the passenger seat of the car. While looking for the weapon, the officer also found four lids of marijuana. Marijuana constitutes contraband, which is subject to seizure. This Court stated in the third paragraph of the Syllabus in *Dorrough v. State,* Okl.Cr., 452 P.2d 816 (1969) that:

"A search of an automobile, after a lawful arrest, is a lawful search; and the seizure of property the result of such lawful search is a lawful seizure thereof."

Because Officer Sasser had probable cause to arrest defendant for the crime of armed robbery and because he also had the right to believe that weapons could be found in the vehicle, he acted lawfully in searching the vehicle without a warrant.

▪ The defendant's next assignment of error is that the trial court erred by not striking the cross-examination of the defendant concerning the sentence he received for his prior conviction. To support this contention, defendant cites the case of *Davis v. State,* Okl.Cr., 489 P.2d 789 (1971), in which this Court stated:

". . . We are of the opinion that such questions as to time actually served on previous convictions are highly improper."

In *Davis v. State,* supra, we did not hold that such questions constituted reversible error, but that they were highly improper. In any event, the question in the instant case is distinguishable from the one asked in *Davis v. State,* supra. In the instant case the State's question concerned the sentence received, not the time actually served, as in *Davis v. State,* supra. This is an important distinction. When a prosecutor asks the defendant to state the time actually served, it is improper because the jury may learn that the defendant did not serve the entirety of the sentence he received on a prior conviction. However, when the question deals only with the sentence received, such an intimation is not ordinarily possible. This Court dealt with this question in *Linebarger v. State,* Okl.Cr., 527 P.2d 178 (1974). We stated:

". . . In the present case, the State did not ask the defendant the time he actually served on his prior convictions. The State only asked the sentence which he received on each of his prior convictions. A careful reading of the record reveals that the State was eliciting indirectly that the defendant did not serve the entirety of his sentences he had received on his prior convictions. This is evidence from the testimony which shows the defendant was convicted of other crimes before the time had expired to which he was sentenced on a previous conviction. . . ."

We held that the questioning in that case was improper, but that it was harmless error.

Therefore, in view of the previous rulings of this Court, it is evident that it is improper for the State to question a defendant about the time actually served or to elicit this information indirectly by asking the sentences given. In the instant case, however, there was no questioning about the time served, nor was there any attempt to elicit this information indirectly. The State merely mentioned the sentence given in the prior conviction. Accordingly, we find no merit in this assignment of error.

▪ The defendant further asserts that the trial court erred by requiring this cause to continue into the late evening, and thus forcing the jury to a fast and unconsidered verdict. The record discloses that the jury returned its verdict before 10:00 p. m., at which time defense counsel moved for a mistrial. (Tr. 441) This Court stated in *Jones v. State,* Okl.Cr., 456 P.2d 610 (1969), paragraph four of the Syllabus, that:

"The length of time during which a jury should be required to consider a case is within the sound discretion of the trial court, and this court will not interfere with the exercise thereof, unless manifestly abused."

After careful examination of the record, we can find no evidence that the trial court

abused its discretion in this matter. The jury had ample time to consider its verdict. Therefore, the defendant's assignment of error is without merit.

The defendant's next assignment of error is that the Assistant District Attorney engaged in activities that denied the defendant a fair and impartial trial. He contends that prejudicial remarks were made as to the race of the defendant, marijuana, and prior convictions. After examining the record we find that the statements were not prejudicial in the context of the whole record. The only reference to the race of the defendant was when the Assistant District Attorney asked the store clerk, Terry Laird, for a description of the men who committed the armed robbery. This question was legitimate and proper. The subject of marijuana arose when Officer Sasser testified that he found marijuana when he was searching the defendant's car for weapons. The Assistant District Attorney did not make any comments on the subject of marijuana which were prejudicial to the defendant. Finally, defendant objects to the fact that the State mentioned in closing argument his prior conviction for unlawful possession of marijuana. Given the fact that this prior conviction was first mentioned by the defendant during direct examination, we fail to see how the repetition of this fact by the State was prejudicial. See, *Hart v. State,* Okl.Cr., 535 P.2d 302 (1975).

The defendant next argues that the sentence he received in Case No. CRF–75–683, is excessive. We note the penalty imposed was well within the range for the offense of robbery with firearms, after former conviction of a felony. We have read the transcript and are convinced that the verdict of guilty is supported by the overwhelming weight of the evidence. It is well established that this Court lacks power to modify a sentence unless the sentence is so excessive as to shock the conscience of the Court. See, *Barnett v. State,* Okl.Cr., 521 P.2d 411 (1974). We, therefore, find that defendant's sentence in said case is not excessive.

The defendant's final assignment of error is that the trial court erred by allowing Charles Sasser to testify as to statements made by the defendant after defendant had requested the assistance of an attorney. The testimony of Officer Sasser discloses that the defendant never requested the assistance of an attorney before he made the statement in question. The record reveals that Officer Sasser stated that he had read the defendant the Miranda warnings approximately 5 minutes after his arrest and that the defendant replied that he understood those rights. When Officer Sasser asked the defendant if he wanted an attorney, the defendant replied that he did not. The statements in question were statements made after the Miranda warnings had been given. The defendant asked Officer Sasser what would be the best way to get an attorney. Mr. Sasser again advised the defendant of his constitutional rights and asked him if he understood them. The defendant then continued the conversation without asking for the assistance of counsel. This Court has previously held that the right to the assistance of counsel during interrogation can be waived. In *Grigsby v. State,* Okl.Cr., 496 P.2d 1188 (1972), we stated:

"When an accused has been fully advised of his constitutional rights, especially his right to presence of counsel during an interrogation, and that an attorney will be provided if he is indigent, and where it appears that the accused understands his rights, it may be assumed that any incriminating statements made thereafter constitutes a waiver. . . ."

See, also, *Shirey v. State,* Okl.Cr., 520 P.2d 701 (1974), *Hogan v. State,* Okl.Cr., 530 P.2d 1026 (1975).

In the case at bar it was clear that the defendant was fully advised of rights to the presence of counsel during an interrogation. Rather, he was advised of this right on two occasions within a period of approximately 15 minutes. The defendant told Officer Sasser that he understood his rights. Then he persisted in making voluntary statements to Mr. Sasser, to which Mr. Sasser

234 **234**

testified in court. This is a clear example of a waiver of the right to the presence of counsel. The trial court did not abuse its discretion by permitting Charles Sasser to testify. We find no merit in this assignment of error.

We have carefully examined the assignments of error raised by the defendant and find that they are without merit. Accordingly, the judgment and sentence, CRF–75–683, is, hereby *AFFIRMED* and the purported appeal from the judgments and sentences in CRF–75–681 and CRF–75–682 are *DISMISSED*.

BUSSEY, P. J., and BRETT, J., concur.